```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
 LIFE PROJECT, LLC, et al.,              :
                                         :
                          Plaintiffs,    :   24cv3872 (DLC)
                -v-                      :
                                         :
 GRAIL, INC., et al.,                    :   OPINION AND ORDER
                                         :
                          Defendants.    :
                                         :
-----------------------------------------X
```

APPEARANCES:

For plaintiffs:
Philip M. Giordano
Giordano & Company, P.C.
One McKinley Square, 6th Floor
Boston, MA

For defendant GRAIL, Inc.:
Robert Lauri Lindholm , Jr.
Nelson Mullins Riley & Scarborough LLP
330 Madison Avenue, 27th Floor
New York, NY

Wesley Tyler Moran
Nelson Mullins Riley & Scarborough, LLP
3751 Robert Grissom Parkway, Suite 300
Myrtle Beach, SC

For defendant Illumina, Inc.:
Mohini Rarrick
Huth Reynolds LLP
490 Quinnipiac Avenue
New Haven, CT

Karl Huth
Huth Reynolds LLP
41 Cannon Court
Huntington, NY

For defendant Computershare Trust Company:
James H. Forte
Saiber, Schlesinger Satz & Goldstein, LLC
One Gateway Center, 13th Floor
Newark, NJ

DENISE COTE, District Judge:

The plaintiffs Life Project, LLC ("Life Project") and Dr. Peter Bach bring breach of contract claims in this diversity action against Illumina, Inc. ("Illumina"), GRAIL, Inc. ("GRAIL"), and Computershare Trust Company, N.A. ("Computershare").  Life Project had a consulting agreement with GRAIL that entitled it to shares in GRAIL.  Plaintiffs assert that a delay of six weeks in receiving access to converted shares, following GRAIL's acquisition by Illumina, entitles plaintiffs to damages.  For the following reasons, the defendants' motions to dismiss are granted.

## Background

The following facts are drawn from the First Amended Complaint ("FAC") or from exhibits attached to the FAC.  The allegations are taken as true for purposes of these motions.

Defendant GRAIL is a healthcare research and technology corporation that specializes in technologies to advance early cancer detection.  GRAIL is a wholly owned subsidiary of Illumina.  The plaintiff Dr. Bach is a physician and sole member of plaintiff Life Project.

I.   The Consulting Agreements

On May 1, 2018, GRAIL executed a Consulting Agreement with Life Project.  In exchange for research and consulting services, GRAIL agreed to compensate Life Project at a rate of $950 per hour and with stock options for 50,000 shares of GRAIL stock.  Among other things, the Consulting Agreement states that Life Project would provide services to GRAIL as an independent contractor, not as an agent, employee, or representative of the company.  It also states that GRAIL could assign the Agreement and its rights and obligations under the Agreement to a successor-in-interest by merger or any other "change of control."  Finally, the Consulting Agreement includes a provision limiting liability:

> IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, OR DAMAGES FOR LOST PROFITS OR LOSS OF BUSINESS, HOWEVER CAUSED AND UNDER ANY THEORY OF LIABILITY WHETHER BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHER THEORY OF LIABILITY REGARDLESS OF WHETHER COMPANY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING THE FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY. . . .

(emphasis supplied).

By May 2019, all 50,000 shares of Life Project's GRAIL stock options had vested.  On May 1, 2019, Life Project and GRAIL executed the First Extension and Amendment of Consulting Agreement (the "Amended Consulting Agreement" and, collectively

with the Consulting Agreement, the "Consulting Agreements"). The Amended Consulting Agreement provided Life Project with an additional 150,000 shares of GRAIL stock options.

II. The Merger Agreement

On September 20, 2020, during the time that Life Project was providing consulting services to GRAIL, GRAIL, Illumina, and two additional entities merged (the "Merger Agreement"). The Merger Agreement sets forth the terms for the conversion of GRAIL stock for Illumina stock.

The Merger Agreement also details the means of delivery of the converted shares to GRAIL stockholders. Article III, § 3.02 of the Merger Agreement states that, not less than 30 days before the effective date of the Merger Agreement (the "Merger Effective Date"), Illumina "shall designate" a bank or trust company "reasonably acceptable to the Company to act as agent (the 'Exchange Agent') for the exchange of shares of Company Stock in accordance with this Article III." The Merger Agreement provides that Illumina will deposit with the Exchange Agent "book-entry shares" representing the aggregate converted Illumina shares owed to GRAIL shareholders. Plaintiffs allege, upon information and belief, that Computershare served as the Exchange Agent and had an obligation to deliver the Illumina shares to plaintiffs.

4

III. Dr. Bach's Receipt of Illumina Shares

On June 1, 2021, Dr. Bach informed GRAIL that Life Project would be ending its independent contractor relationship with GRAIL. By that time, all 200,000 of Life Project's stock options in GRAIL had vested and, that month, Dr. Bach exercised all of them.

On August 18, 2021, Illumina completed its acquisition of GRAIL and the Merger Agreement became effective. Grail and Illumina provided all GRAIL employees with an "Employee FAQ," also dated August 18, 2021. The Employee FAQ explains how employees who were "U.S. stockholders" could receive "prompt payment of equity and cash considerations" following the merger.

On August 24, 2021, the converted Illumina shares were issued to stockholders in their Computershare accounts. Despite persistent efforts, however, Dr. Bach did not gain access to his account until October 1, 2021. He then sold his Illumina shares in five tranches between October 6 and December 22, for a total value of $1,092,911.67.

Meanwhile, Illumina's share price had fallen. On August 24, Illumina's stock price was $479.67 per share. On October 1, 2021, the price of Illumina's stock was $394.84 per share. Plaintiffs assert that the delay in receiving access to their

converted shares resulted in a loss of not less than $228,099.51.

Plaintiffs sued GRAIL, Illumina, and Computershare on May 19, 2024. The defendants filed motions to dismiss the original complaint on August 20, and on September 13 plaintiffs filed the FAC. The FAC asserts three claims against GRAIL and Illumina: 1) breach of contract pursuant to the Merger Agreement (Count I); 2) breach of the implied covenant of good faith and fair dealing pursuant to the Merger Agreement (Count II); and 3) breach of contract pursuant to the Consulting Agreements (Count V). The FAC asserts two additional claims against Computershare: 1) breach of contract pursuant to the Exchange Agent Agreement (Count III); and 2) breach of the implied covenant of good faith and fair dealing pursuant to the Exchange Agent Agreement (Count IV).

On October 11, GRAIL and Illumina, and separately Computershare, moved to dismiss the FAC pursuant to Rule 12(b)(6), Fed. R. Civ. P. In addition to opposing the motions to dismiss, plaintiffs seek written discovery of the defendants. The motions to dismiss became fully submitted on November 15.

## Discussion

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as

6

true, to state a claim to relief that is plausible on its face." Doe v. Franklin Square Union Free School Dist., 100 F.4th 86, 94 (2d Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022) (quoting Iqbal, 556 U.S. at 678).  "In determining if a claim is sufficiently plausible to withstand dismissal, a court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Doe, 100 F.4th at 94 (citation omitted).  In assessing the pleadings on a motion to dismiss, a court may review "only a narrow universe of materials," including facts "stated on the face of the complaint" and "documents appended to the complaint or incorporated in the complaint by reference." Clark v. Hanley, 89 F.4th 78, 93 (2d Cir. 2023) (citation omitted).

I.   The FAC fails to state a claim against GRAIL and Illumina.

Plaintiffs allege that GRAIL and Illumina breached both the Merger Agreement and the Consulting Agreements.  For the reasons that follow, GRAIL and Illumina's motion to dismiss is granted.

A.   Merger Agreement

The parties agree that Delaware law governs the Merger Agreement.  The plaintiffs assert that they are third-party beneficiaries to the Merger Agreement.

Under Delaware law, "only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions."  <u>NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC</u>, 922 A.2d 417, 434 (Del. Ch. 2007).  "Mere incidental beneficiaries," in contrast, "have no legally enforceable rights under a contract."  <u>Id.</u>  Being a party to or a third-party beneficiary to a contract is necessary not only to enforce an agreement's explicit provisions, but also to enforce the implied covenant of good faith and fair dealing.  <u>See</u> <u>Nemec v. Shrader</u>, 991 A.2d 1120, 1128 (Del. 2010).

To qualify as a third-party beneficiary of a contract:

> (i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract.

<u>Bako Pathology LP v. Bakotic</u>, 288 A.3d 252, 271 (Del. 2022) (citation omitted).  "Contracting parties will often specify their intent as to third-party beneficiaries on the face of the agreement, typically by disclaiming an intent to convey third-

8

party beneficiary status" in what is called a "no-third-party-beneficiaries provision." Crispo v. Musk, 304 A.3d 567, 574 (Del. Ch. 2023).

A court "will disregard a general no-third-party-beneficiaries provision where the contract includes more specific language demonstrating an intent to benefit a third party." Id. at 575. Where, however, a no-third-party-beneficiaries provision includes carve outs -- specifying those situations in which certain parties will be third-party beneficiaries to the contract -- that suggests "a strong intent to disclaim" any other third-party beneficiaries. Id.

When considering corporate contracts, "courts are reticent to confer third-party beneficiary status to stockholders," and have done so only "in limited circumstances." Id. at 575-76. In the context of merger agreements, "no-third-party-beneficiaries provisions are arguably entitled to greater weight," since they are adopted "to prevent collective action and agency problems that would result from giving shareholder standing to enforce merger agreements." Id. at 577 (citation omitted).

Section 11.05 of the Merger Agreement provides a customized no-third-party beneficiary provision. It explains:

> Parties in Interest. This Agreement shall be binding upon, inure solely to the benefit of, and be

> enforceable by, only the parties hereto, and nothing in this Agreement, express or implied, is intended to or shall confer upon any other Person any right, benefit or remedy of any nature whatsoever under or by reason of this Agreement, except (i) as specifically provided in Section 7.05, Section 7.18, Section 7.19, Section 9.05, Section 11.05, Section 11.07 and Section 11.09 (which is intended to be for the benefit of the Persons expressly covered thereby and may be enforced by such Persons) and (ii) that the Company shall have the right to pursue damages on behalf of its stockholders in the event of Parent's, First Merger Sub's or Second Merger Sub's Intentional Breach of this Agreement, which right is hereby acknowledged by Parent, First Merger Sub and Second Merger Sub.

Section 11.05 of the Merger Agreement thus provides a blanket disclaimer of third-party beneficiaries, followed by carveouts created by specific provisions of the Agreement.  The presence of several carveouts in § 11.05 "makes the negative implication" that "other third parties are not intended beneficiaries" to the Merger Agreement "stronger."  Crispo, 304 A.3d at 578.

Plaintiffs do not argue that any of the specified carveouts apply here.  Instead, plaintiffs argue that they are third-party beneficiaries to the Merger Agreement based on rights created in § 3.02 of the Merger Agreement.  That provision required Illumina, at the closing of the merger, to "deposit, or [to] cause to be deposited, with the Exchange Agent, for the benefit of [GRAIL stockholders] . . . book-entry shares representing the aggregate Stock Consideration."  But this provision "lack[s] the degree of specificity necessary to overcome the plain language

10

of Section [11.05], which clearly disclaims any intention for stockholders to have any rights to enforce or seek damages under the Merger Agreement." Crispo v. Musk, 2022 WL 6693660, *8 (Del. Ch. Oct. 11, 2022).

Plaintiffs also argue that the § 11.05 disclaimer is too broad since shareholders would have no remedy if deprived of their merger consideration and point to case law which considered whether a narrow exception could exist in that circumstance. See Crispo, 304 A.3d at 584-85. That narrow exception, even if it existed, would not help the plaintiffs. Accordingly, plaintiffs are not third-party beneficiaries of the Merger Agreement and cannot invoke the Agreement to sue for either breach of contract or breach of the implied covenant of good faith and fair dealing.

B.   Consulting Agreements

Plaintiffs next assert that Illumina and GRAIL breached the Consulting Agreements. The parties agree that the Consulting Agreements are governed by California law.[1]

---

[1] The Consulting Agreement provides that it "will be governed by the laws of the State of California." An "Addendum" attached to the Consulting Agreement, however, states that any legal claims arising out of the Agreement will be "governed by . . . the laws of the State of New York." The Court need not resolve which state law governs, however, since the "briefs assume that [California] law controls," which "is sufficient to establish choice of law." Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000).

To plead a breach of contract claim under California law, a plaintiff must plead: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011). At the outset, Dr. Bach's claim for breach of the Consulting Agreements fails as a matter of law. Dr. Bach is not a party to the Consulting Agreements, and plaintiffs do not argue that Dr. Bach is a third-party beneficiary to the Consulting Agreements. See Goonewardene v. ADP, LLC, 6 Cal. 5th 817, 828 (2019).

In any event, plaintiffs fail to state a claim for breach of the Consulting Agreements because they do not identify a provision of either agreement that GRAIL or Illumina breached. Plaintiffs cite only the provisions of the Consulting Agreements that provide for Life Project to receive a specified number of GRAIL shares, which would vest over a period of months. The plaintiffs admit that GRAIL provided Life Project the shares to which it was entitled.

Recognizing that there was no breach of the duty to provide Life Project with GRAIL shares, the FAC asserts that GRAIL and Illumina had "surviving obligations" to ensure that plaintiffs were able to freely enjoy their shares upon execution of the

12

Merger Agreement.  Plaintiffs do not, however, identify a provision of the Consulting Agreements creating those "surviving" obligations.  Accordingly, Life Project's claim for breach of the Consulting Agreements fails as a matter of law.

Separately, plaintiffs' claim for breach of the Consulting Agreements is barred by the Consulting Agreements' provision limiting liability.  Parties to a contract may agree to limit their liability in the event of a breach.  Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc., 319 F. Supp. 2d 1040, 1048 (C.D. Cal. 2003) (citing California law).  "In the majority of commercial situations, courts have upheld contractual limitations on liability, even against claims that the breaching party violated a law or regulation," including where the provision "preclud[es] consequential damages."  CAZA Drilling (California), Inc. v. TEG Oil & Gas U.S.A., Inc., 142 Cal. App. 4th 453, 472 (Cal. Ct. App. 2006).

Here, plaintiffs allege that they suffered a loss of not less than $228,099.51 due to the six-week delay in receiving access to their converted Illumina shares.  The Consulting Agreements, however, bar recovery of consequential damages. They provide that no party will be "liable to the other party for any indirect, incidental, special or consequential damages, or damages for lost profits or loss of business."  (Emphasis

13

supplied.)  Plaintiffs argue that their claimed damages, which resulted from a drop in Illumina's stock price during the six-week period, "could be" characterized as direct damages instead of consequential damages.  Not so.  The damages that plaintiffs seek are garden-variety consequential damages.  See <u>Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.</u>, 34 Cal. 4th 960, 968-69 (2004).  Therefore, for this second reason, plaintiffs' claim for breach of the Consulting Agreements is barred as a matter of law.

II.  The FAC fails to state a claim against Computershare.

Plaintiffs maintain that they are a third-party beneficiary to the Exchange Agent Agreement that, they allege, was entered into between Computershare and GRAIL and Illumina, and that Computershare breached this agreement by failing to provide plaintiffs with prompt access to their converted shares.  These claims fail.

A.  Breach of Contract

The FAC asserts that Computershare breached the Exchange Agent Agreement.  Under New York law,[2] to establish a breach of contract a plaintiff must plead the following elements: "(1) a contract exists, (2) plaintiff performed in accordance with the

---

[2] The parties have relied on New York law in addressing this breach of contract claim.  "[S]uch implied consent is sufficient to establish choice of law."  <u>Krumme</u>, 238 F.3d at 138.

14

contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." Martinez v. Agway Energy Services, LLC, 88 F.4th 401, 409 (2d Cir. 2023) (citation omitted). To meet plausibility pleading standards, a plaintiff must identify the specific provision of the contract upon which the breach of contract claim is based. A claim will be dismissed where the plaintiff merely asserts that the defendant committed a breach.

The FAC asserts in conclusory terms that Computershare had an obligation to "ensure prompt delivery and receipt of Illumina Shares to the Plaintiffs" upon the Merger's Effective Date of August 18, 2021. But the FAC does not identify the provisions of the Exchange Agent Agreement that Computershare allegedly breached, let alone connect any provision of that agreement to Computershare's conduct.

Acknowledging these deficiencies in their opposition brief, plaintiffs contend that Computershare breached § 3.02 of the Merger Agreement. That provision states, among other things, that Illumina "shall designate" a bank or trust company to act as the Exchange Agent. But even if Computershare served as the Exchange Agent for the merging entities, Computershare is not a party to the Merger Agreement. The Merger Agreement imposed no

15

obligations on Computershare and it cannot form the basis for plaintiffs' breach of contract claim against Computershare.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Finally, plaintiffs assert that Computershare breached its duty of good faith and fair dealing. New York law implies such a covenant "in all contracts." See Sec. Plans, Inc. v. CUNA Mut. Ins. Soc., 769 F.3d 807, 817 (2d Cir. 2014). "Pursuant to this principle, neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. (citation omitted).

For the implied covenant to apply, "a party's action must directly violate an obligation that may be presumed to have been intended by the parties." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407-08 (2d Cir.), certified question accepted, 7 N.Y.3d 837 (2006), and certified question answered, 8 N.Y.3d 283 (2007) (citation omitted). That is, "the implied covenant can only impose an obligation consistent with other mutually agreed upon terms in the contract." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-99 (2d Cir. 2005) (citation omitted). The implied duty does not "add to the contract a substantive provision not included by the parties." Id. at 199 (citation omitted).

Plaintiffs' claim for breach of the implied covenant fails as well. The FAC does not identify any provision of the Exchange Agent Agreement from which this claim arises or provide a basis to find that the plaintiffs are entitled to enforce a provision of that contract. Instead, it alleges in conclusory terms that Computershare "had an obligation to promptly make available" to plaintiffs their converted Illumina Shares and that Computershare breached the implied covenant of good faith and fair dealing by unreasonably preventing plaintiffs from receiving the shares between August 24 and October 1, 2021. Because the FAC fails to identify any contractual provision that was frustrated by Computershare's alleged conduct, plaintiffs' claim for breach of the implied covenant of good faith and fair dealing must be dismissed.[3]

III. Plaintiffs' Motion for Discovery is Denied.

In the alternative, plaintiffs seek discovery of the Exchange Agent Agreement. It is well established that "[a] plaintiff who has failed adequately to state a claim is not entitled to discovery." Main St. Legal Servs., Inc. v. Nat'l

---

[3] Plaintiffs admit that New York law requires dismissal but speculate that Massachusetts law might govern the Exchange Agent Agreement. Massachusetts law, however, is entirely consistent with New York law on this point. See FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 100 (1st Cir. 2009) (applying Massachusetts law).

Sec. Council, 811 F.3d 542, 567 (2d Cir. 2016). Because plaintiffs have failed to state a claim against Computershare, their motion for discovery is denied.

## Conclusion

The October 11 motions to dismiss brought by GRAIL and Illumina and by Computershare are granted. Plaintiffs' November 1 motion for discovery is denied. The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:   New York, New York
         February 5, 2025

                                    _____
                                       DENISE COTE
                                    United States District Judge